**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: April 05 2007

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re | ) | Case No. 06-31213 |
| | ) | |
| Roseann Josephine Hayes, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

Debtor objected to the claim of eCast Settlement Corporation ("eCast")[Doc. #30] and eCast contests the objection. The basis of Debtor's objection is § 502(k)[1] of the Bankruptcy Code, 11

---

[1] Section 502(k) provides as follows:
(1) the court, on the motion of the debtor and after a hearing, may reduce a claim filed under this section based in whole on an unsecured consumer debt by not more than 20 percent of the claim, if--
    (A) the claim was filed by a creditor who unreasonably refused to negotiate a reasonable alternative repayment schedule proposed on behalf of the debtor by an approved nonprofit budget and credit counseling agency described in section 111;
    (B) the offer of the debtor under subparagraph (A)--
        (i) was made at least 60 days before the date of the filing of the petition; and
        (ii) provided for payment of at least 60 percent of the amount of

U.S.C. § 502(k), which was added to Title 11 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") effective October 17, 2005.

The court has jurisdiction over Debtor's Chapter 13 bankruptcy case under 28 U.S.C. § 1334(a) and the general order of reference in this district entered under 28 U.S.C. § 157(a). Allowance or disallowance of a claim is a core proceeding that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(B).

The factual record consists of the eCast proof of claim, filed in the amount of $24,411.37; the case record; and the Affidavit of Vicky Hughes filed by Debtor. eCast filed its claim as the assignee of Citibank SD, NA, successor to Associates National Bank, for the unpaid pre-petition balance on Debtor's credit card account. Debtor does not contest the claim amount of $24,411.37, alleging only that it should be reduced by 20% under § 502(k). eCast is one of only two claimants in this case, both unsecured, with filed claims totaling $25,346.17. Debtor has no secured or priority creditors. Debtor's schedules show that she has an unencumbered interest in certain real property that is her residence, which is undoubtedly the reason she sought Chapter 13 relief instead of Chapter 7 relief. Debtor is a below the median, low income debtor with monthly net income of just $1,383.93. Under her confirmed Chapter 13 plan Debtor will pay 70% of the allowed claims of the two creditors. [Doc. ## 2, 28]. If eCast's claim is allowed in the full amount of $24,411.37, it will be paid $17,087.96 without interest over 60 months time through Debtor's confirmed plan, as compared to the $20,700.00 over 60 months time that was proposed before bankruptcy [Doc. #38, Hughes Aff. ¶ 6].

The court cannot find any cases interpreting § 502(k) yet. It establishes a penalty against unsecured creditors in favor of debtors under certain limited circumstances with the apparent goal of encouraging non--bankruptcy repayment plans for consumer debt. The provision is a would-be

---

>>   the debt over a period not to exceed the repayment period of the
>>   loan, or a reasonable extension thereof; and
> (C) no part of the debt under the alternative repayment schedule is
>   nondischargeable.
> (2) The debtor shall have the burden of proving, by clear and convincing evidence,
> that--
>> (A) the creditor unreasonably refused to consider the debtor's proposal;
>>   and
>> (B) the proposed alternative repayment schedule was made prior to
>>   expiration of the 60 day period specified in paragraph (1)(B)(i).

11 U.S.C. § 502(k).

carrot for a debtor and a would-be stick for the creditor. But the standards that § 502(k) establishes for debtors to take advantage of the claim reduction penalty are more vexing to determine than they might appear on initial reading. And based on those standards, the prospect of a debtor recovering such a penalty in any given case appears more illusory than practical and realistic, even where as here it appears that the creditor would have been better off if it had accepted the proposal for an alternative repayment schedule.

One example of a question presented by the language of the statute arises in reviewing paragraphs (k)(1) and (k)(2)(A) of § 502. Paragraph (k)(1) allows the court to reduce certain claims by 20% if the creditor "unreasonably refused to negotiate a reasonable alternative repayment schedule." Paragraph (k)(2)(A), which imposes a clear and convincing burden of proof on a debtor, uses different language. Instead of using the language from paragraph (k)(1), paragraph (k)(2)(A) says that debtor must prove that the creditor "unreasonably refused to consider the debtor's proposal." Does Congress intend that refusing to negotiate a reasonable alternative payment schedule is the same as refusing to consider a proposal? Another question is application of the standards for reasonableness or unreasonableness. Where reasonableness or unreasonableness is required, is the standard objective or subjective?

Parsing the language of the statute, which is always the starting point for statutory interpretation of the Bankruptcy Code, *Duncan v. Walker*, 533 U.S. 167, 172 (2001); *United States v. Ron Pair Enterprises*, Inc., 489 U.S. 235, 241 (1989), the court discerns the potential for eleven separate elements of proof:

1. Claim is for unsecured consumer debt.
2. No part of the debt is nondischargeable.
3. An approved nonprofit budget and counseling agency proposed an alternative repayment schedule to the creditor filing the claim.
4. The proposal was made at least 60 days before the filing of the petition.
5. The proposed alternative repayment schedule offers repayment of at least 60% of the amount of the debt.
6. The proposed alternative repayment schedule was otherwise reasonable.
7. The proposed repayment schedule does not extend beyond the existing repayment period, or a period that would be a reasonable extension of that repayment period.
8. The creditor refused to consider the proposal.
9. The creditor's refusal to consider the proposal was unreasonable.
10. The creditor refused to negotiate the proposed alternative repayment schedule.
11. The creditor's refusal to negotiate was unreasonable.

In this case the court need not address whether refusing to negotiate and refusing to consider are the same or separate elements of proof, or the standard of reasonableness to be applied, or any other

3

issues of interpretation of § 502(k) that exist save one. The court finds that the element of timing of the proposal is determinative of Debtor's motion in this case.

The timing element requires the proposal to have been "made at least 60 days before the date of the filing of the petition." 11 U.S.C. § 502(k)(1)(B)(i). In turn, § 502 (k)(2)(B) assigns Debtor the burden of proving by clear and convincing evidence that the proposal "was made prior to the expiration of the 60- day period specified in paragraph (1)(B)(i)." Although awkward, putting these two paragraphs together reads as follows: the proposal "was made prior to the expiration of at least 60 days before the date of the filing of the petition." Debtor and eCast seem to believe that this language requires the proposal to have ben made *within* the 60 day period before the petition was filed, which it appears to have been. [Doc. # 39, ¶ 7]; *cf.* 11 U.S.C. § 547(b)(4)(A)(statutory language is "on or *within* 90 days before the date of the filing of the petition."[emphasis added]). The court disagrees.

The proper way to count the 60 day time period in § 502(k) is not without some question based on conflicting case law addressing how to calculate other similarly worded Bankruptcy Code provisions such as § 547(b)(4)(A)(pre-BAPCPA) and § 109(h)(BAPCPA), 11 U.S.C. § 109(h). The language of § 502(k)(1)(B)(i) indicates that the 60 days is counted backwards from the date of filing of the petition. The first question is whether the date of filing of the petition is excluded or included in counting the 60 days. The statutory language answers this question as well, because the time period is 60 days <u>before</u> the date of filing of the petition. This language directs that counting start on the day before the petition was filed, excluding the petition date from the calculation. This manner of counting the 60 days is also consistent with the majority rule for applying similar language in § 547(b)(4)(A). *See Alexander v. Southern Mills, Inc. (In re Terry Manuf. Co.)*, 325 B.R. 638, 642 (Bankr. M.D. Ala. 2005); *cf.* Fed. R. Bankr. P. 9006(a). *But cf. In re Moore*, Nos. 06-50573, 06-50794, 2006 Bankr. LEXIS 3530 (Bankr. E.D. Tenn. December 14, 2006)(date of filing the petition is included in counting 180 day time period in 11 U.S.C. § 109(h)(1), another provision added by BAPCPA). The date of filing of the petition in this case was May 25, 2006. Excluding May 25, 2006, the first day that would be counted is May 24, 2006. Starting on May 24, 2006, and counting backwards, the sixtieth day was Sunday, March 26, 2006.

As March 26, 2006, was a Sunday, the second question that arises in applying the statutory 60 day time period is whether Rule 9006 of the Federal Rules of Bankruptcy Procedure governs computation of time under § 502(k). Fed. R. Bankr. P. 9006(a). Under Rule 9006 the last day of a period computed thereunder shall be included, unless it is a Saturday, a Sunday or a legal holiday.

4

As the time period being counted goes backwards, the next date before March 26, 2006, that was not a Saturday or Sunday or legal holiday was Friday, March 24, 2006.

The court concludes, however, that Rule 9006(a) does not apply to calculating the time period in § 502(k).[2] The basis for this conclusion is the Sixth Circuit Court of Appeals decision in *Smith v. United States (In re Smith)*, 96 F.3d 800 (6th Cir. 1996). In *Smith*, the Sixth Circuit construed § 523(a)(1)(B)(ii), which addresses for dischargeability purposes whether a tax return was filed "after two years before the date of the filing of the petition." The Sixth Circuit held that Rule 9006(a), and specifically the exclusion of weekend days and holidays from the count, does not apply in making the two year calculation in § 523(a)(1)(B)(ii). *Id.* at 802-03. The nature and the language of § 523(a)(1)(B)(ii) at issue in *Smith* are indistinguishably similar to § 502(k)(k)(1)(B)(i). In its decision the Sixth Circuit stated that "[a]s a general matter, we believe that Rule 9006 should apply only to periods calculated by counting forward from the occurrence of some event." *Id.* at 802. The court can find no reason that the Sixth Circuit's analysis in *Smith* should not apply with equal force to calculating the 60 day time period in § 502(k). The 60 day time period thus expired on Sunday, March 26, 2006. With the language of § 502(k)(2)(B) specifying that the offer has to have been made "prior" to expiration of that 60 day period, the court interprets March 25, 2006, as the last date upon which a proposal could have been made to be within the time period prescribed by the statute based on the eventual petition filing date.

The Affidavit of Vicky Hughes attests that a proposed alternative repayment schedule was made on behalf of Debtor to Citicards, eCast's assigneee, by Consumer Credit Counseling Services of Lima. [Doc. #38, ¶ 5]. The last four digits of the account number upon which the proposal was made identified in her affidavit match the last four digits of the account number on the purported summary attached to eCast's proof of claim. However, Ms. Hughes states that the proposal was "forwarded to Citicards for payment on said account on or about April 1, 2006." In order to fall within the statutory time period based on when Debtor ultimately filed her petition, the proposal had to have been made any time before but by no later than March 25, 2006. The date April 1, 2006, is outside the statutory time period as calculated by the court. "On or about April 1, 2006" could actually be March 25, 2006, or before, or it could actually be April 1, 2006, or later. But since

---

[2]This is *dicta*. Ultimately the result of Debtor's objection is the same whether Rule 9006 applies or not. The court nevertheless believes that its view on the correct way to calculate the 60 day time period in § 502(k) may be helpful to other lawyers and litigants, especially given the lack of any other case law so far.

5

Debtor is required to prove that the proposal was made within the statutory time period by clear and convincing evidence, the vagueness of the affidavit language on timing does not prove the statutory timing element. Debtor has not met her burden of proof and she is not entitled to the 20% penalty reduction on the eCast claim under § 502(k).

A separate order in accordance with this memorandum of opinion will be entered by the court.